IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL W. STANTON,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 4:22-CV-00102-AMK<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Michael Stanton ("Plaintiff" or "Mr. Stanton") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter is before the undersigned by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF Doc. 11.)

For the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner.

I.     Procedural History

On October 27, 2017, Mr. Stanton protectively filed applications for DIB and SSI. (Tr. 254.) In each, he alleged a disability onset date of January 1, 2016. (*Id.*) He alleged disability due to Scheuermann's disease, kyphoscoliosis of the spine, stenosis at C5-C6, mood instability, anger management issues, and incontinence. (*Id.*) Mr. Stanton's applications were denied at the initial level (Tr. 151-57) and upon reconsideration (Tr. 160-64), and he requested a hearing (Tr.

1

167). In a pre-hearing brief dated July 9, 2019, Mr. Stanton amended his alleged onset date to October 27, 2017. (Tr. 15, 319.) On July 16, 2019, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 34-84.)

The ALJ issued an unfavorable decision on September 16, 2019, finding Mr. Stanton had not been under a disability from October 27, 2017 through the date of the decision. (Tr. 15-27.) Mr. Stanton requested review of the decision by the Appeals Council. (Tr. 220-21.) The Appeals Council denied his request for review on November 17, 2021, making the ALJ's September 16, 2019 decision the final decision of the Commissioner. (Tr. 1-3.) Mr. Stanton filed his Complaint seeking judicial review on January 18, 2022. (ECF Doc. 1.) The case has been fully briefed and is ready for review. (ECF Docs. 8, 9.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Mr. Stanton was born in 1987 and was 28 years old on the alleged disability onset date, making him a younger individual under Social Security regulations. (Tr. 25.) He had at least a high school education. (*Id*.) Mr. Stanton had not engaged in substantial gainful activity since October 27, 2017, the amended alleged onset date. (Tr. 17.)

### B. Medical Evidence

#### 1. Relevant Treatment History

Although the ALJ has identified severe physical and mental impairments (Tr. 17-18), Mr. Stanton only challenges the ALJ's decision with regard to the opinion of his treating mental health provider, Jordan Miller, Psy.D. (ECF Doc. 8, pp. 3, 9-11). The evidence discussed herein in accordingly focused primarily on Mr. Stanton's mental health impairments.

i.   **Physical Health Treatment**

Mr. Stanton has congenital scoliosis which causes him chronic back pain. (Tr. 989-91.) On November 1, 2017, Mr. Stanton underwent a fusion of his thoracic spine, from his T2-T12 vertebrae. (Tr. 988-91.) On November 20, 2017, the staples from his spinal fusion surgery were removed and he was healing well. (Tr. 1006.) Charles Sammarone, Jr., D.O., noted that Mr. Stanton was doing well post-surgery. (Tr. 1008.) Dr. Sammarone recommended Mr. Stanton use a cane for gait stability after surgery. (*Id.*)

At his physical therapy visit with Michael Morris, PT, on December 6, 2017, Mr. Stanton's incision was noted to be healing with no signs of infection, although he complained of numbness and sensory differences at the surgical site. (Tr. 1138-40.) Mr. Stanton had decreased aerobic capacity, muscle weakness and debilitation, and a guarded posture due to the recent surgery. (Tr. 1138.) PT Morris recommended home health physical therapy treatment to improve his current condition. (Tr. 1138, 1143.)

Mr. Stanton was involved in a motor vehicle accident six weeks after his spinal surgery, on December 10, 2017. (Tr. 988, 1001.) X-rays of his thoracic spine from his emergency room visit that day showed an accentuated thoracic spine kyphosis with multiple old compression deformities. (Tr. 989.) The hardware from the fusion was intact from T2 through T12. (*Id.*) Mr. Stanton was given a prescription of naproxen 500 mg and later released. (Tr. 998.) At a follow-up office visit on December 18, 2017, Dr. Sammarone found Mr. Stanton to be stable after his accident and recommended that he continue with medication and rest. (Tr. 1001-05.)

ii.   **Mental Health Treatment**

On June 29, 2017, Mr. Stanton underwent a psychiatric evaluation with Brahmaiah Tandra, M.D., of Cortland PsyCare. (Tr. 1581-83.) He complained of problems with depression,

3

anger, anxiety, and severe back pain.  (Tr. 1581.)  He was not taking any psychotropic medications, but reported that he had been seeing Jordan Miller, Psy.D., at the same facility for a year.  (*Id.*)  On examination, his mood was anxious and his affect was consistent with his mood.  (Tr. 1582.)  Nevertheless, he was pleasant, cooperative, and polite, with fair eye contact, coherent speech, and fair insight and judgment.  (*Id.*)  Dr. Tandra diagnosed major depressive disorder, generalized anxiety disorder, and pain disorder with related psychological factors, and started Mr. Stanton on Pristiq and Tegretol.  (Tr. 1582-83.)  Thereafter, Mr. Stanton continued to receive mental health treatment at Cortland PsyCare.  He treated with Melinda Smith, DNP, ACNSBC, for medication management, and with Jordan Miller, Psy.D., for psychotherapy, supervised by Michael Heilman, Ph.D.  (Tr. 1201-03, 1418-32, 1616-1730.)

At a psychotherapy session with Dr. Miller on January 10, 2018, Mr. Stanton complained of chronic and severe pain from his spinal surgery, but reported rehab was progressing as expected.  (Tr. 1616.)  His examination findings were unremarkable, with normal mood, cooperative behavior, and good eye contact.  (Tr. 1617.)  Dr. Miller noted that Mr. Stanton had made moderate progress since his last session.  (*Id.*)

At a medication management office visit with NP Smith on January 18, 2018, Mr. Stanton complained of increased irritability and stressors relating to his car accident.  (Tr. 1619.)  He also complained pain and irritability from his Scheuermann's disease, but reported that his November 2017 spinal fusion had eased the pain in his back.  (*Id.*)  On examination, his mood was moderately anxious and moderately irritable, but other findings were normal.  (*Id.*)  NP Smith increased his Lamictal dosage to 50 mg and his Valium dosage to 10 mg.  (Tr. 1620.)

Mr. Stanton returned to psychotherapy with Dr. Miller on January 25, 2018, where he complained of extremely elevated physical pain and increased anxiety and anger.  (Tr. 1621.)

4

On examination, he was mildly irritable, moderately anxious, and mildly depressed, but also well-groomed, well-dressed, cooperative, appropriate, and friendly, with logical, relevant, and coherent thought processes. (Tr. 1622.) Dr. Miller observed he had made moderate progress since intake and mild progress since his last session. (*Id.*)

At his next psychotherapy visit, on February 8, 2018, Mr. Stanton complained of overwhelming physical pain from his surgical recovery, with elevated anxiety and anger. (Tr. 1624.) His examination findings remained unremarkable, except that his mood was mildly irritable and mildly anxious. (Tr. 1625.) Dr. Miller again noted moderate progress since intake and mild progress since his last session. (*Id.*)

Ms. Stanton attended a medication management visit with NP Smith on February 15, 2018, where he reported "improved mood irritability and improvement in anxiety level since the increase of Lamictal and Valium," but continued episodes of irritability around crowds of people and anxiety in a car. (Tr. 1627.) His mental status examination findings were unremarkable, except that he was moderately anxious and moderately irritable. (Tr. 1628.) NP Smith increased his Lamictal dosage to 100 mg and continued his Valium dosage at 10 mg. (*Id.*)

He returned to psychotherapy on February 22, 2018, where he reported that chronic pain relating to his surgical recovery continued to affect his daily functioning, and that his pain had increased as his physical therapy increased. (Tr. 1629.) He was moderately anxious on examination, but also well groomed, with cooperative, appropriate, and friendly behavior. (Tr. 1630.) Dr. Miller continued to observe moderate progress since intake date and mild progress since his last session. (*Id.*) He made no changes to Mr. Stanton's treatment plan. (*Id.*)

At his psychotherapy visit on March 9, 2018, Mr. Stanton reported worsening physical pain as he healed from physical therapy. (Tr. 1632.) His examination findings remained

unremarkable, except for a mildly depressed mood. (Tr. 1633.) Dr. Miller continued to note moderate progress since intake date and mild progress since his last session. (*Id.*)

At his medication management visit on March 15, 2018, he reported improved mood with the increase of Lamictal, with some slight irritability remaining. (Tr. 1635.) His mental status examination findings were unremarkable, except that his mood was mildly anxious and mildly irritable. (Tr. 1636.) NP Smith continued his medications as prescribed. (*Id.*)

Mr. Stanton attended additional psychotherapy sessions with Dr. Miller approximately every two weeks from March 22 through June 14, 2018. (Tr. 1638-58.) He reported chronic pain, surgical recovery, anxiety, depression, and family conflicts. (Tr. 1638, 1641, 1644, 1647, 1650, 1653, 1656.) His mental status examination findings remained unremarkable, except that his mood (anxiety, depression, irritability, and anger) fluctuated between mild and moderate levels. (Tr. 1639, 1642, 1645, 1648, 1651, 1654, 1657.) Dr. Miller routinely observed that Mr. Stanton had made moderate progress since intake and mild to moderate progress since his last session, except that he noted worsening due to physical pain on May 31, 2018. (*Id.*)

At a medication management office visit with NP Smith on June 14, 2018, Mr. Stanton reported a new onset of depression and inability to sleep, and said he smoked marijuana occasionally for anxiety. (Tr. 1659.) His examination findings remained unremarkable, except for his mildly anxious, mildly irritable, and mildly depressed mood. (Tr. 1660.) NP Smith observed that his mild irritability and anxiety had improved with medication, but that his mild depression and insomnia were worsening. (*Id.*) She continued his Lamictal and Valium, and started him on Zoloft for depression and Trazodone for sleep. (*Id.*)

Mr. Stanton returned to psychotherapy on June 27 and July 10 and 26, 2018. (Tr. 1662-70.) On June 27, he reported an "incident with a student loan officer causing an over reaction of

6

anger." (Tr. 1662.) On July 10, he reported that his medication helped to increase his sleep, but led to more physical pain upon awaking. (Tr. 1665.) On July 26, he reported that his anti-anxiety medications were no longer effective, and that he had increased anxiety and anger. (Tr. 1668.) His mental status examination findings remained unremarkable, except for mild to moderate irritability, depression, anxiety, and anger. (Tr. 1663, 1666, 1669.) Dr. Miller continued to note moderate progress since intake and mild progress since his last session. (*Id.*)

At a medication management visit with NP Smith on July 26, 2018, Mr. Stanton reported that his depression had improved with Zoloft, but he was still not sleeping on some days with the increase of Trazodone. (Tr. 1671.) He also reported increased irritability and anxiety. (*Id.*) His mental status examination findings remained unremarkable, except for mild anxiety, mild irritability, and mild depression. (Tr. 1672.) She continued him on Valium and Zoloft at the same dosage, and increased his Lamictal and Trazodone dosages. (*Id.*)

Mr. Stanton attended psychotherapy visits with Dr. Miller on August 9 and 24, 2018. (Tr. 1674-79.) On August 9, he reported that medication changes and difficulties with sleep were complicating his chronic pain. (Tr. 1674.) On August 24, he reported elevated pain due to recent activities, and complained of worsening anxiety and depression. (Tr. 1677.) He was moderately irritable, depressed, and/or anxious on examination, with various pain behaviors and ambulation with a cane noted; other findings remained unremarkable. (Tr. 1675, 1678.)

He returned to medication management on August 29, 2018, where he reported improvement with irritability and sleep with the increase in his Lamictal and Trazodone. (Tr. 1680.) His examination findings remained unremarkable, except for mild anxiety, irritability, and depression. (Tr. 1681.) NP Smith continued his medications at the same doses. (*Id.*)

7

Mr. Stanton attended eight psychotherapy visits with Dr. Miller, approximately every two weeks, from September 6 through December 12, 2018.  (Tr. 1683-1706.)  He reported chronic pain, sleep difficulties, anxiety, depression, irritability, relationship issues, and life stressors.  (Tr. 1683, 1686, 1689, 1692, 1695, 1698, 1701, 1704.)  His examination findings remained largely unremarkable, but with mild to moderate depression, anxiety, anger, and/or irritability; sometimes he ambulated with a cane and/or showed pain behaviors.  (Tr. 1684, 1687, 1690, 1693, 1696, 1699, 1702, 1705.)  Dr. Miller continued to note moderate progress since intake and mild progress since his last session.  (*Id.*)

He attended a medication management visit with NP Smith on December 13, 2018.  (Tr. 1707-09.)  NP Smith noted that she had called in a prescription for Remeron when Mr. Stanton noted Trazodone had stopped working.  (Tr. 1707.)  Mr. Stanton reported better sleep with Remeron, but with "semi-lucid" dreams.  (*Id.*)  Examination findings were unremarkable, and NP Smith noted that his mild irritability, insomnia, and anxiety were improving with medications.  (Tr. 1708.)  She continued his Valium, Zoloft, and Lamictal, discontinued trazodone, and added Remeron.  (*Id.*)

Mr. Stanton attended psychotherapy with Dr. Miller on December 26, 2018, reporting recent illness and overwhelming physical pain.  (Tr. 1710.)  Examination findings were unremarkable, except for mild depression and moderate anxiety.  (Tr. 1711.)

He returned for medication management on March 7, 2019, reporting stable depression and improving irritability.  (Tr. 1421.)  His examination findings were unremarkable, and NP Smith again noted that his mild irritability, insomnia, and anxiety were improving with medications.  (Tr. 1422.)  She continued his medications as prescribed.  (*Id.*)

8

He returned to psychotherapy with Dr. Miller every two weeks from March through June 2019. (Tr. 1418-20, 1424-32, 1713-21, 1725-27.) He complained of chronic pain, anger, anxiety, and life stressors. (Tr. 1418, 1424, 1427, 1430, 1713, 1716, 1719, 1726.) On examination, he continued to demonstrate mild to moderate mood factors (depression, irritability, anxiety) and some pain behaviors. (Tr. 1419, 1425, 1428, 1431, 1714, 1717, 1720, 1726.) Dr. Miller noted moderate progress since intake and mild progress since his last session. (*Id.*)

At his medication management office visit on June 7, 2019, he continued to report stable depression and improving irritability. (Tr. 1722.) His mental status examination findings remained unremarkable, and NP Smith noted that he had a cheerful mood and his mild irritability, insomnia, and anxiety continued to improve with medication. (Tr. 1723.) She again continued his medications as previously prescribed. (*Id.*)

### 2. Opinion Evidence

#### i. Treating Psychologist

On May 15, 2019, treating psychologist Dr. Miller completed a Medical Source Statement Of Ability To Do Work-Related Activities (Mental). (Tr. 1457-59.) In support of his opinion findings, Dr. Miller reported considering the following factors: surgery records, a psychological assessment, psychotherapy two times per month for three years, and medication management. (Tr. 1458.) He reported treating Mr. Stanton since May 12, 2016. (*Id.*)

In assessing Mr. Stanton's ability to understand, remember, and carry out instructions, Dr. Miller noted the following limitations: moderate limitations in understanding and remembering simple instructions; marked limitations in carrying out simple instructions, making judgments on both simple and complex work-related decisions, and understanding and remembering complex instructions; and extreme limitations in carrying out complex instructions.

9

(Tr. 1457.)  In support, he observed: "Physical pain associated w/ co-morbid Depression and Anxiety limit concentration and ability to tolerate extended periods of work.  He would be unable to sustain Employment w/ others as tolerance is severely limited." (*Id.*)

With respect to Mr. Stanton's ability to interact appropriately with others and respond appropriately to changes in a work setting, Dr. Miller noted the following limitations: moderate limitations in interacting appropriately with supervisors; marked limitations in interacting appropriately with the public and co-workers; and extreme limitations in his ability to respond appropriately to usual work situations and changes in a routine work setting.  (Tr. 1458.)  In support, he observed: "As with other section, physical pain is severe, compounded by psychological diagnoses, impacting ability to interact with others very difficult. Tolerance for conflict is non-existent." (*Id.*)  As to other limitations, Dr. Miller wrote: "Unable to maintain posture of stay in one position for more than a few moments.  Agitation fluctuates during the day. Anxiety + fear of re-injury impacts daily functioning." (*Id.*)

    ii.  **State Agency Reviewers**

On January 5, 2018, state agency reviewing psychologist Bruce Goldsmith, Ph.D., opined that Mr. Stanton had moderate limitations interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing himself.  (Tr. 91.)  Dr. Goldsmith further opined Mr. Stanton could perform one-to-four step, moderately complex work tasks, without strict, fast-paced production demands, could maintain occasional and superficial interaction with coworkers, supervisors, and the general public, and could perform work tasks in a relatively static setting.  (Tr. 96.)  On March 7, 2018, state agency reviewing psychologist Janet Souder, Psy.D., affirmed Dr. Goldsmith's opinion at the reconsideration level.  (Tr. 124, 128-29.)

C. **Hearing Testimony**

1. **Plaintiff's Testimony**

At the hearing on July 16, 2019, Mr. Stanton testified that he lived with his parents and sister. (Tr. 45.) He had a handicap placard from his primary care physician due to chronic pain, but rarely drove. (Tr. 46.) A friend brought him to the hearing. (*Id.*) He had an associate's degree in small business management. (*Id.*) His prior work included training manager at Five Guys, assistant manager at Eat'n Park, and kitchen work at the Brown Derby and the Texas Roadhouse. (Tr. 47, 50.)

Mr. Stanton testified he was unable to work at his past jobs because of the pain and social issues caused by his pain; he said he could not stand being around people or managing employees. (Tr. 51-52.) He described issues with knee stability, risk of falls, and pain. (Tr. 52.) He previously attempted physical therapy, where he was able to lift thirty pounds maximum, but only two pounds repetitively for about fifteen to twenty minutes. (Tr. 53.) He reported that his surgeon said he had plateaued in his ability to improve. (Tr. 54.) He took the maximum prescribed dosage of acetaminophen and naproxen, and muscle relaxer methocarbamol. (Tr. 55.) Mr. Stanton acknowledged irritability due to pain. (Tr. 56-57.) He was on a mood suppressant and Valium for anxiety. (Tr. 57.) He reported becoming angry and anxious when out in public, and said he must be by himself. (*Id.*) He reported being in anger management with his psychiatrist. (*Id.*) Describing a "bad day," Mr. Stanton said he would be in a lot of pain and would stay in his room all day to help with his anger and pain. (Tr. 63-64.) He also reported experiencing fatigue and feeling sedated due to his medications. (Tr. 64-65.)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified that a hypothetical individual of Mr. Stanton's age, education, and work experience, with the functional limitations described in the RFC could not perform Mr. Stanton's prior work, but could perform representative positions in the national economy, including mail clerk, electronics worker, and inspector and hand packager. (Tr. 78-79.) The VE reported that those jobs could be performed sitting or standing. (Tr. 79.) He testified that it would preclude competitive employment if the hypothetical person would either be off task 15% of the work day or absent more than two days per month. (Tr. 81-82.)

### III. Standard for Disability

Under the Social Security Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a

        severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4.     If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.     If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform other work available in the national economy. *Id.*

## IV.    The ALJ's Decision

In her September 16, 2019 decision, the ALJ made the following findings:[1]

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2020. (Tr. 17.)

2.     The claimant has not engaged in substantial gainful activity since October 27, 2017, the alleged onset date. (*Id.*)

3.     The claimant has the following severe impairments: Plica syndrome of the left knee, with posterior horn medial meniscus tear; Scheuermann's kyphosis, status-post multi-level spinal fusion; major depressive disorder; generalized anxiety disorder; adjustment disorder; and "pain disorder with related psychological features." (Tr. 17-18.)

---

[1] The ALJ's findings are summarized.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.)

5.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can stand or walk for a total of 4 hours of an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; frequently balance; must avoid all exposure to unprotected heights. He is able to perform tasks which can be learned in 90 days or less, but no tasks which require fast-pace, or high production demands, such as assembly line work, but he can perform goal-oriented work such as office cleaning. He can have occasional interaction with coworkers and the public, but cannot perform tasks that involve customer service duties, confrontation, conflict-resolution, directing the work of others, persuading others, or being responsible for the safety or welfare of others. He can tolerate only occasional changes in workplace tasks or duties, with any such changes being gradually introduced and explained in advance. (Tr. 20.)

6.  The claimant is unable to perform any past relevant work. (Tr. 25.)

7.  The claimant was born in 1987 and was 28 years old, defined as a younger individual age 18-49, on the alleged disability onset date. (*Id.*)

8.  The claimant has at least a high school education. (*Id.*)

9.  Transferability of job skills is not material to the determination of disability. (*Id.*)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

Based on the foregoing, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 27, 2017, through the date of the decision on September 16, 2019. (Tr. 27.)

## V. Plaintiff's Arguments

In his sole assignment of error, Mr. Stanton argues that the ALJ failed to properly consider the opinion evidence from Jordan Miller, Psy.D. (ECF Doc. 8, pp. 3, 9-11.)

14

## VI. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the

Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-547 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**B.     Sole Assignment of Error: Whether ALJ Properly Considered Dr. Miller's Opinion**

Mr. Stanton argues the ALJ erred in finding Dr. Miller's opinion "not persuasive" because Dr. Miller's opinion was supported by his treatment notes and consistent with other evidence in the record. (ECF Doc. 8, pp. 10-11.) The Commissioner responds that this argument "rests on a failed understanding of the substantial evidence threshold" because the question is whether the ALJ's assessment of Dr. Miller's opinion was supported by substantial evidence, not whether the evidence could support a different outcome. (ECF Doc. 9, p. 7.)

**1.     Regulations Governing Evaluation of Medical Opinions**

The Social Security Administration's ("SSA") regulations for evaluating medical opinion evidence require ALJs to evaluate the "persuasiveness" of medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5)" of the regulation. 20 C.F.R. § 404.1520c(a); *see Jones v. Comm'r of Soc. Sec.*, No. 3:19-CV-01102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020).

16

The five factors to be considered are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2). ALJs must explain how they considered consistency and supportability, but need not explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

As to supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "supportability" is the extent to which a medical source's own objective findings and supporting explanations substantiate or support the findings in the opinion.

As to consistency, the regulations state: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In other words, "consistency" is the extent to which a medical source's opinion findings are consistent with evidence from other medical and nonmedical sources in the record.

### 2.     ALJ Properly Evaluated Persuasiveness of Dr. Miller's Opinion

In finding Dr. Miller's opinion not persuasive, the ALJ explained:

> Dr. Jordan Miller, PsyD provided a form dated May 15, 2019, and expressing the opinion that the claimant has marked and extreme limitations in his ability to carry out simple instructions; making work decisions, remembering complex instructions; interacting with coworkers and the public, and in responding to changes in his work setting. Dr. Miller indicated that the claimant's "co-morbid depression and anxiety limit concentration and (his) ability to tolerate extended periods of work;" that claimant's tolerance for others is "severely limited;" that his "tolerance for conflict (is) non-existent;" and that his fear of re-injury "limits (his) daily functioning." <u>Although Dr. Miller is an acceptable medical source who has</u>

17

> supervised the claimant's treatment since May 2015, his opinion is not consistent with or supported by the claimant's counseling notes in the record, and is not persuasive. The longitudinal record does not support the "marked" and "extreme" limitations indicated, and his records frequently characterize the claimant's depression, anxiety, irritability and anger as "mild" or "moderate," but never more severe.

(Tr. 24 (internal citations omitted).)

Addressing supportability, Mr. Stanton argues that Dr. Miller's opinion is "well supported by his treatment notes," including his diagnoses of major depressive disorder and generalized anxiety disorder, and observations of reoccurring anxiety and depression with negative thought patterns. (ECF Doc. 8, p. 10.) He also notes that he was prescribed numerous mental health medications. (*Id.*) Addressing consistency, Mr. Stanton argues Dr. Miller's opinion was "consistent with other evidence in the medical record," including the symptoms Mr. Stanton reported to Dr. Brahmaiah during his 2017 psychiatric evaluation, his diagnoses at that evaluation, and Dr. Brahmaiah's referral to Dr. Miller for psychotherapy. (*Id.*)

A review of the ALJ decision reveals that she discussed Mr. Stanton's mental health treatment records at length, including the records of Dr. Miller, NP Smith, and Dr. Brahmaiah. (Tr. 19, 22-23.)  In doing so, she acknowledged his diagnoses, his complaints of chronic pain and recurrent depression and anxiety, and his use of psychotropic medications. (*Id.*)  Additionally, she observed that his examinations noted abnormal mood findings like depression, irritability, anxiety, and anger, but at no more than mild or moderate levels, and that he was pleasant, cooperative, appropriate, and friendly. (*Id.*)  She acknowledged when he reported medications were less effective, but also observed that his records reflected no medication changes from late-2018 through July 2019, when his mood symptoms were no more than "moderate" and were "improving with meds." (*Id.*)

18

The ALJ's discussion of the medical records is consistent with this Court's review of the same. Further, the ALJ's finding that the "mild" and "moderate" mood abnormalities noted throughout Mr. Stanton's records do not support, and are not consistent with, the "marked" and "extreme" limitations from Dr. Miller's medical opinion is supported by substantial evidence.

Mr. Stanton does not identify material evidence that the ALJ failed to consider in weighing the opinion evidence, nor does he argue that the ALJ mischaracterized the evidence. Instead, he argues simply that Dr. Miller's opinion was supported by his treatment notes and consistent with the medical evidence. (ECF Doc. 8, p. 10.) His argument mistakes the question before this Court. Even if a preponderance of evidence supported Mr. Stanton's argument, this Court cannot overturn the Commissioner's decision "so long as substantial evidence also support[ed] the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477; *Blakley*, 581 F.3d at 406. To second-guess the ALJ's persuasiveness finding in this case would ultimately interfere with the recognized "'zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen*, 800 F.2d at 545).

For the reasons set forth above, the Court finds the ALJ's assessment of Dr. Miller's opinion was adequately articulated and supported by substantial evidence. Mr. Stanton's sole assignment of error is without merit.

### VII. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner.

October 12, 2023

                                               */s/Amanda M. Knapp*
                                               AMANDA M. KNAPP
                                               United States Magistrate Judge